Good morning, Your Honors. Quinn Denver for Robert Guy Baker. I would like to reserve two minutes. The district court found that the use of the identification from the preliminary examination at the subsequent trial was a violation of due process. The government, the state, does not contest that, as far as I can see. They say that you cannot reach the merits of that claim because of a procedural default, to wit that there is a failure to object on those particular grounds by defense counsel. We believe that that procedural default is cured by the fact that the failure to object constituted ineffective assistance to counsel under Strickland v. Washington. Two prongs to that. The first one is, would a reasonably competent attorney Counsel, counsel, can I just ask you about the standard of review? Do you agree that Walker v. Martel has now resolved the issue and that we have to apply adpedeference to this to the Strickland analysis? No, Your Honor, I don't, no. That's how I read it, so tell me why not. Your Honor, on this question of the deference in the State of California, adepa deference The California State court went through the analysis, found there was no prejudice. And I'm asking, don't we now have to give adpedeference to that determination? Yes, I think so. Okay. That's all I wanted to know. And I think it is an unreasonable application, and I'll tell you why, because they ignored many facts. But the first question is, was it ineffective assistance to counsel? But let's assume that it was. Okay. Because then the only question then is the prejudice. Right. And there I have to convince you that it's more likely than not it would have been a different result. Not more probable than not, but enough probability to undermine confidence. Well, but you've got to do that with the double deference that adepa now imposes on us. I have to first convince you that we meet the Strickland standard. Then I have to convince you that they were erroneous. But it was unreasonable, and I will try to do that. Okay. And maybe just start with the prosecutor's closing argument. Well, I started with the prosecutor's closing argument. I guess I found that to be the most compelling data point against your position, so I'd love to hear you address that. I think that might be right, Your Honor. It's true that the prosecutor urged the jury not to consider that. Okay. The key thing is, though, is that the jury, it was not stricken, it wasn't stricken from the record, and the jury could consider it. In fact, and we have good reason to believe they did, because they sent in one jury note. The jury note said, we would like to know when and where Tauriac told Lopez that the shooter was Robert Luna. Now, I don't understand exactly why they were asking that question, but it could have no relevance at all other than to Lopez's identification of a fake. Why do you say that? Because that's not how I read it. Well, I can't think of why would they care at all about when he was told who the shooter was, unless they were considering his identification of who the shooter was. Trying to figure out whether she was telling the truth when she came into court and identified your client, and wanted to know, well, has she made prior consistent statements? At what point in time did she do that? That's how I read it, but maybe you do. Well, I read it the other way, Your Honor. And I think still that the jury, having asked that question, which the ‑‑ which they then came back with a verdict within about two hours. Let's put aside that one question. Just what else do you have that suggests that the jury actually did rely on the in-court ID? That's all we have. I mean, the jury goes out, they deliberate for a while, they come back and ask one single question, which I read as going to the identification. You know, not what happened there. They wanted to know when and where both of them said it happened. And I suggest to you that suggests that they did consider it. But even if they didn't consider it, they still have to look at ‑‑ you have to look at all the evidence there. Now, because there was no objection, two things came in that should not have come in. One was the fact that Lopez testified at preliminary hearing. He said, he's sitting right there when asked to be the shooter. He can't even look at me. The second thing that came in that was highly prejudicial was the fact that about a week before that, Lopez had asked Officer Pimentel, I want to see who you believe was the shooter. And within an hour, he was shown a picture of him. And that was part of the preliminary hearing testimony that the jury heard at your client's trial? Actually, the part about Pimentel was done by Pimentel himself. At the trial. Okay. And that would not have come in. It was brought in by the defense. It would not have been brought in except for the fact that the ID was brought in. So they heard this, that's the guy who did it. He can't even look at me. And then they also heard that Pimentel said, yeah, this is the guy we thought did it. Here's his picture. That seems to undermine significantly the reliability of Lopez's in-court idea. And that's, in fact, what the prosecutor told the jury. Well, the jury hears that the police think that my guy is the shooter. Of course they do. That's why he's sitting at the table. At trial. That's no shock to the jury. Well, but, Your Honor, there's never been any idea that the police can come in and testify, give their opinion as the guilt of the defendant. I mean, that's always excluded, and that's exactly what they heard. I assume if the police thought it was somebody else, they would have charged that person. I mean, he's in trial. I don't think the jury is under any illusions about that. Your Honor, this is an expression of the police belief in the guilt of the defendant. That has never been admitted in any State or Federal court. The police come in and say, I think he did it. That's exactly what they heard here. If this had been kept out, as it should have been, here's what they would have heard. They would have heard, first of all, that Lopez, shortly afterwards, identified the shooter as being 5'8", that's 6 inches taller than my client, who's 5'2". And the fact my client is 5'2", is pretty memorable. There aren't many 5'2 adult males around. So I – if it had been that, that discrepancy is a big thing. The other thing they would have – the other thing they would have heard that's out there is he looked at a six-photo show-up, and my client was in there, and he identified someone else. Well, they did – the jury did hear that. I'm sorry. They did hear that. Right. Right. They did. You're not contesting the admissibility of that. No, no. But that's all that would have been left if they kept out – they kept out the I.D. Well, it's a little bit – Instead of hearing these two bad things, they would have heard two good things. It's a little bit worse, though, than he picked someone else. I mean, he did narrow it down to your guy and the other guy and wavered for quite some time before saying, I can't be sure, but I think it's the other guy. But he identified someone else, and he also said the man was 6 inches taller than my short fellow. Important facts. If you don't have him also saying, oh, that's him that did it, oh, by the way, look at him. He can't even look him in the eye. Oh, by the way, the police told me he's the guy who did it. I think that's pretty bad stuff. I think – I mean, again, I'm just looking at the prosecutor's closing argument. He tells the jury that the in-court I.D. that shouldn't have come in, he says it's something that we shouldn't be considering because it's not reliable. And I guess he just – he really says so definitively to the jury, just put it out of your mind. I know that came in, but I'm telling you, it's not reliable. Focus on what we do have. But they didn't ask to strike it. There's no reason to believe that they follow that. They didn't have to follow that. They deliberated for quite a while. And then you have to look at – this was a very tight case. And that could have swayed the difference here. The first trial, there was two days of deliberation, several rereadings of testimony, and the jury split seven for guilt and five for innocence. And that was with that I.D. in there. And they come back into this case, it's a very close case. And they rely then on the so-called identifications of these other people saying that Mr. Baker did it. But the key thing is, is that you're asking about the unreasonableness of it. The State appellate court didn't even consider some critical facts. They didn't even put them in the statement of facts. And I'll give you some of them. They ignored totally the jury note. They ignored that – they ignored that the fact of the difference in height, the mis- – the mis-description in terms of height. Ignored that. They ignored the jury note. They ignored the fact – they cited hearsay testimony that Barajas had said that Mr. Baker was with him and he was angry at him for shooting Lopez. They ignored his testimony, which was that he was with him. He never saw a gun. He saw no altercation. And he ain't the one that did nothing. They ignored that totally. And then, as far as Toriak, they ignored every reason that you would not believe her. She was a five-time felon, a drug addict, a parole absconder. She fled the scene before the police got there. She was facing a charge at time of trial of possession for a methamphetamine for sale at the very time of her testimony. She fabricated her testimony in at least three different points. We pointed out at the opening brief at 16. And she had a total motive to lie, to protect Barajas, her new boyfriend. Mr. Baker had no motive to shoot Lopez. He didn't even know the guy. Barajas did. Lopez was coming over to confront Barajas because Barajas was having sex with his girlfriend. So he had every reason to shoot him. There's no reason at all for my client to do it. Kennedy. Kennedy. Let me ask you a question. What was there in the second trial, if anything, that wasn't presented in the first trial? I'm not sure the testimony about the testimony that the police believed that my client was the one who was shooting. I'm not sure whether that was in both trials. I'm not sure there was any other change. I mean, the preliminary hearing testimony identification was in the first trial and the second trial, and I'm not sure of any other changes. But maybe that one thing was different. So what I'm saying, it's a closed case. If you pull out that identification so that the jury cannot consider it, if you pull out the fact that police think he did it so they can't consider it, you're left with this big discrepancy in height, my short fellow, and you've got the fact that you couldn't pick him out of a lineup, I think there's that undermines confidence in the ---- In the first case, was there the same error that there was in the second? I'm sorry. You want to say that? I couldn't understand. Was there the same error that there was in the first trial that there was in the second? There certainly was in the fact that there was the identification, the hearsay identification from the preliminary hearing was used in the first trial. And I'm not sure whether it came in, the fact that the police had told Lopez beforehand he's the one we believe who did it. I haven't checked that. I could certainly check it and confirm it for the Court. On the prejudice issue, it seems that there was less ---- less prejudice in the second trial than in the first. Is that right? I don't think so, I don't think so, Your Honor, because in the first trial, they definitely heard that there was a ---- that there was an identification. They should not ---- we're looking at the prejudice now. If counsel had done his job, he would have kept out the fact that there had been this ID, that's the guy who shot me, he can't look at me. He would have kept out the fact that the police told ---- when asked, who do you think did it, showed a picture of my client. So if you pull those things out, then I think we have a reasonable probability of different result. And I think they misanalyzed Strickland, and it's objectively unreasonable because, as I told you, there's a number of points they totally ignored. They ignored, for instance, this critical ---- these critical points that would say it was a closed case and that kind of an error, which ended up allowing in some very harmful testimony. In spite of the DA saying you shouldn't consider it, they certainly could, and they took some time on it. And so we feel that the second prong we've shown that it was prejudicial and the finding of the State court was just unreasonable on that. They just didn't look at the facts. They just kind of ---- they pointed to, well, three people said he did it, and the DA says ignore it. They looked at the other points. Kennedy. Thank you. Good morning, Your Honors. May it please the Court, Luke Fadum, for the Attorney General's office for Respondent. I will keep this short unless the Court has further questions and go directly to prejudice. It seems that the conversation the Court has just had with counsel shows that the lower court, given the two layers of deference, was not unreasonable in determining that there was no prejudice to Petitioner here. There were three witnesses besides Mr. Lopez who identified Petitioner as the shooter. Two of them were present during the shooting. One testified she saw the muzzle flash. A third witness, Mr. Rodriguez, was a friend of Petitioner's, and Mr. Rodriguez described a conversation he had with Petitioner in which Petitioner confessed to the shootings. This was corroborated. Petitioner said he had used a 9-millimeter handgun. Could you speak up a little? I'm sorry, Your Honor. I'll face the microphone. I was saying Mr. Rodriguez's identification of Petitioner as the shooter was corroborated by the nature of the shell casing that was found on the scene. Petitioner had told Mr. Rodriguez he used a 9-millimeter handgun. A 9-millimeter casing was found there. Moreover, as Your Honor suggested or commented on, during closing arguments, both counsel urged the jury to disregard Mr. Lopez's testimony. While the testimony was not stricken, you can't have a more powerful argument for disregard than both opponents saying to disregard a piece of evidence. Petitioner also used that evidence to some effect. He said that his counsel said in closing argument that this showed an insidious action by the police. It compromised the whole investigation. The implication was the police were against him. So this, in a sense, might have accrued to Petitioner's benefit. Unless the Court has any further questions, I will submit on that. Thank you. Thank you, Your Honor. I'll be very brief, Your Honor. I know I'm over time. The only question of whether Rodriguez was a friend of Petitioner. When he testified at trial, he said that he was not a friend. He knew nothing about it. He didn't remember any interview at San Quentin with the investigator. Barajas, when he testified at trial, said that the Petitioner was there, but that he did not have a gun, he saw no altercation with Lopez, and that he ain't done nothing. So I think relying on the hearsay statements made in prison to some investigator compared to the in-court testimony just doesn't work, unless the Court has any questions. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Noonan, Watford